**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Franklin P. Kottschade,

Plaintiff,

v.

The City of Rochester,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-898 ADM/AJB

---

George O. Ludcke, Esq., Kelly & Berens, P.A., Minneapolis, MN, appeared on behalf of Plaintiff.

Clifford M. Greene, Esq., and Pamela VanderWiel, Esq., Greene Espel, P.L.L.P, Minneapolis, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On November 21, 2001, the Motion to Dismiss and for Summary Judgment [Doc. No. 7] of Defendant City of Rochester ("Defendant") was argued before the undersigned United States District Judge. The City moves for dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons set forth below, the Motion to Dismiss [Doc. No. 7] is granted.

## II. BACKGROUND

A complete recitation of the facts in this case would be long and complicated.[1] Boiled down to the occurrences bearing upon this motion, the relevant background is as follows.

In February, 2000, Plaintiff Franklin P. Kottschade ("Plaintiff") sought a conditional use

---

[1] The fact statement alone spans 16 pages of Plaintiff's Response Brief.

FILED JAN 22 2002
RICHARD D. SLETTEN, CLERK
JAN 22 2002
DEPUTY CLERK

permit from Defendant to build a townhouse project on his property. Defendant granted Plaintiff's application to rezone his property to accommodate the development, and approved Plaintiff's General Development Plan. Amended Complaint at ¶¶ 9, 19. However, this approval was subject to nine specified conditions. Id. Plaintiff alleges the conditions impose burdens which render the project economically unfeasible. Pl. Resp. at 2. Plaintiff's compromise attempts to eliminate the conditions have been rejected, and he was unsuccessful in pursuing "various administrative procedures" to eliminate the conditions. Id. Plaintiff applied for a variance, seeking a waiver from compliance with all nine conditions. Complaint at ¶ 20. Plaintiff's petition for a variance was denied by both the Defendant at the zoning board and council levels. Id. at ¶¶ 22-23. Defendant asserts that each of the nine conditions reflect an application of preexisting ordinances and regulations applicable to all development projects. Def. Mem. in Supp. at 3; Adkins Aff., Ex. B. Plaintiff challenges the constitutionality of the conditions attached to the permit granted by Defendant. Plaintiff has styled his cause of action as a federal takings claim under 42 U.S.C. § 1983, rather than a state court inverse condemnation claim.

**III. DISCUSSION**

The Federal Rules of Civil Procedure provide that a party may move to dismiss claims for lack of jurisdiction over the subject matter under Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the Complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F.Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the non-moving party. Ossman, 825 F.Supp.

at 880.

The parties agree that the threshold issue in this case is whether Plaintiff can bring a constitutional takings claim in federal court in the first instance, or whether Plaintiff must first seek compensation through state procedures. Defendant argues that Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985), prevents Plaintiff from bringing his takings claim in federal court without first exhausting the state law mechanisms available for seeking just compensation. Defendant relies on the Supreme Court's holding that "the State's action is not 'complete' in the sense of causing a constitutional injury 'unless or until the State fails to provide an adequate postdeprivation remedy for the property loss.'" Williamson, 473 U.S. at 195 (quoting Hudson v. Palmer, 468 U.S. 517, 532 n.12 (1984)).

Plaintiff responds that City of Chicago v. International College of Surgeons, 522 U.S. 156 (1997), overrules Williamson and allows a takings claim to be brought directly in a federal venue. Plaintiff relies on the conclusion in College of Surgeons that "the District Court properly exercises federal question jurisdiction over the federal claims in [Respondent's] complaints . . . ." College of Surgeons, 522 U.S. at 166. Plaintiff reasons that because (1) claims can only be removed to federal court under 28 U.S.C. § 1441(a) if the district court has original jurisdiction, and (2) the claims removed in College of Surgeons were Due Process, Equal Protection, and takings claims, therefore it necessarily follows that (3) the district courts of the United States must have original jurisdiction over takings claims. Pl. Resp. at 22.

As both parties candidly concede, the dispositive determination in this case is whether or not College of Surgeons overrules the Williamson precedent. It does not.

**A. Williamson**

In Williamson, the Court granted certiorari to address the question whether federal, state, and local governments must pay money damages to a landowner whose property allegedly has been temporarily "taken" by the application of government regulations. Williamson, 473 U.S. at 185. The Court did not reach that question, however, finding instead that the takings claim, *inter alia,*[2] was premature because respondent had not utilized state procedures provided for obtaining just compensation. Id. at 186.

Because the Fifth Amendment does not proscribe takings, but only takings *without just compensation*, no constitutional violation occurs until just compensation has been denied. Id. at 195 n.13. "The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action." Id. Therefore, a property owner simply has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation. Id. at 195.

In discussing the procedure for bringing a takings claim, the Court stated that "[i]f the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." Id. at 194-195 (quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1013, 1018 n.21 (1984)). Under this exhaustion requirement, takings claims are premature until the property owner

---

[2] The Williamson Court also held that Respondent had not obtained a final decision regarding the application of the challenged zoning ordinance and subdivision regulations. Id. at 187. Both the absence of a final decision and the failure to exhaust state procedures were independent reasons why Respondent's claim was not ripe. Id. at 187, 194, 200.

has availed itself of the state process provided for seeking redress.[3] See Id. at 195.

The State of Minnesota provides a process by which plaintiffs may be compensated for any takings of property. Pursuant to the Minnesota Constitution, Article I, section 13, private property may not be taken, destroyed or damaged for a public purpose without just compensation. To enforce this provision, a plaintiff may bring an inverse condemnation action by petition for writ of mandamus. Wilson v. Ramacher, 352 N.W.2d 389, 394 (Minn. 1984). Plaintiff has not shown that the existing state procedures are either unavailable or inadequate, and until he has utilized those procedures, a federal takings claim is not ripe for adjudication. See id. at 197.

**B. College of Surgeons**

Plaintiff contends that College of Surgeons overrules the Williamson exhaustion requirement. In College of Surgeons, the Supreme Court was asked to consider whether a lawsuit filed in state court seeking judicial review of decisions of a state agency, the Chicago Landmarks Commission, may be removed to federal district court, where the case contains both federal constitutional and state administrative challenges. College of Surgeons, 522 U.S. at 159. While the claims in College of Surgeons were raised through a cause of action created by state law, the state court complaint raised a number of issues of federal law in the form of various federal constitutional challenges.[4] Id. at 164. The case was removed on the basis of federal question jurisdiction, and the District Court exercised

---

[3] "Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Id. at 195.

[4] The multiple federal constitutional claims in College of Surgeons included claims that the challenged ordinances, both on their face and as applied, violated the Due Process and Equal Protection Clauses and effected a taking of property without just compensation under the Fifth and Fourteenth Amendments, and that the manner in which the state agency conducted its administrative proceedings violated Respondent's rights to due process and equal protection. Id. at 160.

supplemental jurisdiction over the state law claims to grant summary judgment in favor of the Defendant. On review, the Seventh Circuit concluded that the District Court was without jurisdiction, holding that deferential review of state agency action was an appellate function not consistent with the character of a court of original jurisdiction. Id. at 161-162. The Seventh Circuit elaborated that the "facial constitutional challenges [were] independent of the record and so would be removable to federal court if brought alone." Id. at 162. The crux of the court's decision was that, because some of the supplemental state law claims involved deferential review, the removed case as a whole could not be termed a "civil action" of which the district courts have original jurisdiction under 28 U.S.C. § 1441. Id.

The Supreme Court granted certiorari to address "whether a case containing claims that local administrative action violates federal law, but also containing state law claims for on-the-record review of the administrative findings, is within the jurisdiction of the federal district courts." Id. at 163. In analyzing this question, Justice O'Connor, writing for the Court, concluded that the federal constitutional challenges raised in the state court complaint established federal question jurisdiction under 28 U.S.C. § 1331 because a "'right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action.'" Id. at 163-164 (quoting Gully v. First Nat. Bank in Meridian, 299 U.S. 109, 112 (1936)). The holding emphasizes that a cause of action created under state law might still "arise under" the laws of the United States if the right to relief under state law requires resolution of a substantial question of federal law. Id. at 164. The Court concluded that "the District Court properly exercised federal question jurisdiction over the federal claims in [Respondent's complaint] . . . ." Id. at 165. Important to the instant case, the tenor of the College of Surgeons decision is that a ripe takings claim, coupled with multiple other

constitutional claims, is properly the basis for removal on federal question jurisdiction. The decision does not speak to the underlying qualifications for ripeness of such a claim.

The Court then proceeded to address the precise issue on which it had granted certiorari. To that end, the Court clarified the propriety of exercising supplemental jurisdiction in particular instances. Specifically, the Court held that because the accompanying state law claims in College of Surgeons formed part of the "same case or controversy" as the federal claims under 28 U.S.C. § 1367(a), the exercise of supplemental jurisdiction over those claims was proper. Id. at 165-166. The Court explained that the District Court's original jurisdiction derived from the federal claims, not the state law claims, and thus the action was properly a "civil action" within the original jurisdiction of the district courts for purposes of removal. Id. at 166.

College of Surgeons does not discuss, elucidate or alter the established standards for determining federal question jurisdiction. The Court simply "explained" that "the facial and as-applied federal constitutional claims raised by [Respondent] 'arise under' federal law for purposes of federal question jurisdiction." Id. at 167-168. The Court never specified which of the various federal claims was sufficient for jurisdiction, but merely noted that they were, *in sum*, sufficient to establish federal question jurisdiction for removal purposes. No language in the College of Surgeons case operates to alter prior law regarding federal question jurisdiction in federal courts, or the exhaustion requirement for takings claims. The Court's conclusion in College of Surgeons is directly responsive to the question on which the Court granted certiorari: "[t]he District Court properly recognized that it could exercise supplemental jurisdiction over [Respondent's] state law

claims, including the claims for on-the-record administrative review of [state agency] decisions."[5] Id. at 174.

College of Surgeons addresses the issue of supplemental jurisdiction; it is not a case purporting to overturn the Williams exhaustion requirement for the ripeness of a constitutional takings claim. In discussing the significance of College of Surgeons, the Fourth Circuit noted that: "[College of Surgeons] *merely holds* that district courts can exercise supplemental jurisdiction over state claims that call for deferential on-the-record review of state administrative findings when the district court already possesses original jurisdiction over another claim." Kirkpatrick v. Lenoir County Bd. of Educ., 216 F.3d 380, 387 n.6 (4th Cir. 2000) (emphasis added). As a matter of law, College of Surgeons simply does not overrule Williams. Therefore, the exhaustion requirement for ripeness of a constitutional takings claim is unaffected and remains good law.[6]

---

[5] In dissent, Justice Ginsburg reiterated the nature and scope of the Court's ruling by characterizing Justice O'Connor's opinion as an "authorization of cross-system appeals" for "on-the-record review of state and local agency actions." Id. at 175-176. That the function of the College of Surgeons case was to clarify the law of supplemental jurisdiction, not to alter the law of federal question jurisdiction, is further supported by Justice Ginsberg's description of the majority's opinion: "all this Court is willing to say is that 'the District Court properly exercised federal question jurisdiction over the federal claims . . . .'" Id. at 188. "The Court's opinion expresses 'no [further] view.'" Id.

[6] The Supreme Court reaffirmed the Williamson exhaustion requirement in City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 710, 714-715, 721 (1999) (no constitutional injury from a taking alone, therefore "[a] federal court . . . cannot entertain a takings claim under § 1983 unless or until the complaining landowner has been denied an adequate postdeprivation remedy"). The Williamson exhaustion requirement has also been recently relied upon by the Eighth Circuit. In Carpenter Outdoor Advertising Co. v. City of Fenton, et al., No. 00-1869 (8th Cir. June 1, 2001), the court upheld the dismissal of a claim based on the Just Compensation Clause of the Fifth Amendment where the appellant had not followed state procedures because "'[t]he general rule is that a plaintiff must seek compensation through state procedures before filing a federal takings claim." Carpenter, slip op. at 6 (citing Von Kerssenbrock-Praschma v. Saunders, 121 F.3d 373, 379 (8th Cir. 1997); Williamson, 473 U.S. at 194-195.

Therefore, until Plaintiff seeks relief in a state court inverse condemnation action and relief is denied, the claim of taking without just compensation is not ripe for decision by a federal court. Accordingly, this Court does not have jurisdiction, and no claim upon which relief can be granted has been stated. Defendant's Motion to Dismiss is granted.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that the City of Rochester's Motion to Dismiss [Doc. No. 7] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: January 22, 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.